CARDO DRUG CO., INC., Respondent, *v.* CHATHAM AND PHENIX NATIONAL BANK OF THE CITY OF NEW YORK and Another, Appellants.

First Department, February 5, 1926.

**Banks and banking — action to recover amount paid individual defendant on plaintiff's check — individual defendant owned half of stock of plaintiff and was officer and active head thereof — blank checks were left with said defendant signed by plaintiff's president — plaintiff's president, day before check was cashed, stopped payment on check No. 6712 on ground that it was lost — individual defendant next day presented check No. 6712-L and defendant bank cashed same — on day after check was cashed, individual defendant was ousted from office — act of individual defendant in cashing check was withdrawal of stop-payment order — no evidence to show that check was not cashed for plaintiff or that stop-payment order referred to check actually cashed — judgment could not be entered against individual defendant in favor of defendant bank under pleadings.**

The defendant bank, which carried plaintiff's checking account, is not liable to the plaintiff for the amount of a check drawn on the plaintiff's account prop-

erly signed by its president and its treasurer, the individual defendant, and cashed by the individual defendant, on the theory that the check was paid after payment thereon was stopped by the president of the plaintiff, since it appears that the individual defendant owned one-half of the stock of the plaintiff corporation and was its treasurer and the active head thereof; that the plaintiff by resolution properly passed authorized the defendant bank to cash checks signed by its president and treasurer; that the plaintiff's president, who took no part in the management of the corporation, stopped payment on check No. 6712 the day before the check in question was cashed by the individual defendant on the ground that said check had been lost or mislaid; that plaintiff's president signed blank checks and left them with the individual defendant for the purposes of the business; that the day after the stop-payment order was given, the individual defendant presented the check in question dated on the day it was presented, which bore No. 6712-L and defendant bank cashed the same, and that on the following day the individual defendant was ousted by plaintiff from his office and the defendant bank was notified thereof.

Assuming that the check presented by the individual defendant and cashed by the defendant bank which bore the number 6712-L was the same check that the plaintiff's president stopped payment on, then the act of the individual defendant, who at that time was still an officer of the corporation, amounted to a withdrawal of the stop-payment order, especially in view of the fact that payment was stopped because the check had been mislaid or lost.

Furthermore, it appears that the stop-payment order could not apply to the check in question because that check was dated after the stop-payment order was given.

It appears, also, that the plaintiff recognized the fact that the money paid to the individual defendant on the check in question was paid to the corporation, for there was no proof as to what became of the funds received by the individual defendant or that the check was not cashed for or on behalf of the plaintiff, or that it did not receive the money paid thereon, but on the contrary, it appears from the minutes of the plaintiff corporation, made on the day after the check was cashed, that the individual defendant was ousted because he had misappropriated to his own use the corporate funds received from the defendant bank on the check.

A judgment could not be rendered in this action in favor of the defendant bank and against the individual defendant, since it appears that he was brought in as a party defendant on motion by the defendant bank, and that the defendant bank did not ask for a verdict in its favor against the individual defendant but contended that payment to the individual defendant was made to him, as treasurer of the plaintiff, and, therefore, was made to the plaintiff itself.

APPEAL by the defendant, Chatham and Phenix National Bank of the City of New York, from so much of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of February, 1925, upon the verdict of a jury rendered by direction of the court, as amended by an order entered on the 24th day of February, 1925, as decrees that the plaintiff recover from said appellant.

Appeal by the defendant, Charles Field, from so much of said judgment as decrees that the defendant Chatham and Phenix National Bank recover from said appellant.

**320** CARDO DRUG CO., INC., *v.* CHATHAM & PHENIX NAT. BANK.

First Department, February, 1926. [Vol. 215

*Kaye, McDavitt & Scholer* [*Jacob Scholer* of counsel; *Edgar A. Meyer* with him on the brief], for the appellant Chatham and Phenix National Bank.

*Horace G. Marks*, for the appellant Charles Field.

*George L. Donnellan* [*John W. Clancy* of counsel], for the respondent.

MERRELL, J. The action was originally brought by the plaintiff to recover of the Chatham and Phenix National Bank of the City of New York an alleged balance on deposit in said bank to the credit of said plaintiff, amounting to $4,026.48. The defendant bank answered, alleging that prior to the commencement of the action and on or about April 13, 1922, the defendant bank paid to Charles Field, treasurer of the plaintiff, the sum of $4,000 pursuant to the terms of a check drawn by the plaintiff upon its said bank account and which check was signed by the proper officers of the corporation duly authorized thereto, and that the said sum of $4,000 was duly received by the said Charles Field; that there still remained on deposit to the credit of the plaintiff a balance of $26.48, which the defendant was ready and willing to pay to the plaintiff upon due and proper demand therefor. After the action was at issue an application was made by the defendant bank to bring in the said Charles Field as a party defendant in the action, and an order was made at Special Term that said Field be brought in as a party defendant and directing the service upon him of a supplemental summons and complaint. The " supplemental complaint " was verified by an officer of the defendant bank, and therein the defendant bank set forth as " a supplement of the claim of the defendant Chatham and Phenix National Bank against the defendant Charles Field " that the said defendant Field is wholly liable for the claim of the plaintiff against the defendant by reason of the fact that the money in question, to wit, the $4,000, was paid to the defendant Field upon his personal indorsement of the check, payment of which the plaintiff claimed had been stopped; that the said Field represented that the said moneys were to be used in connection with the corporation business at the time he received the proceeds of said check, and that relying upon said representations made by said Field the money was paid over to him; that the defendant Field, if plaintiff's accusations were correct, had full knowledge at the time he received said moneys that the payment of the check had been stopped and that he had no authority to receive said moneys on behalf of the corporation; and in the so-called supplemental complaint judgment was demanded in behalf of the defendant Chatham and Phenix National Bank against the defend-

ant Field in the event the plaintiff should obtain judgment against the defendant bank in the action.

On or about August 15, 1921, the plaintiff opened an account with the appellant bank pursuant to a resolution duly adopted by the plaintiff corporation on that day. The resolution adopted by the plaintiff corporation was as follows:

" *Resolved,* that the funds of this corporation be deposited in The Chatham and Phenix National Bank of the City of New York, subject to checks made in the corporate name, signed by its President & Treasurer who are hereby authorized to make, collect, discount, negotiate, endorse, assign and deposit in the corporate name, all checks, drafts, notes and other negotiable paper; and all such checks, drafts, notes and other negotiable paper, payable to or by this corporation, signed as aforesaid (including checks drawn to Cash or Bearer or to the individual order of the officer signing said checks) shall be honored and paid by said Bank, and charged to the Corporation's account, hereby ratifying and approving all that said Bank may do or cause to be done by virtue hereof."

A certified copy of the resolution was at once filed with the bank, together with the usual signature card showing that one Adolph P. Klein was the president and the said Charles Field was the vice-president and treasurer of the said corporation. The signatures of both officers were required upon all checks. While Klein was the nominal president of the plaintiff corporation, he appears to have had little to do with its active management, and at the time of the cashing of the $4,000 check was not a stockholder of the corporation. The defendant Field conducted on behalf of the corporation all transactions with the defendant bank. He was the plaintiff's treasurer and negotiated all loans with the defendant bank for and on behalf of the plaintiff. Field, the vice-president and treasurer, acted as general manager of the corporation. He cashed all checks and was apparently in sole charge of its affairs. He was the only officer of the corporation who ever came to the bank to transact any of the business of the corporation. He owned one-half of the capital stock of the plaintiff. While the defendant bank was not permitted to go into the exact nature of the business carried on by plaintiff, it fairly appeared from the evidence that its activities were along lines other than the usual trading in drugs. Its business required considerable money and it was frequently necessary to obtain funds promptly and without delay. To facilitate the obtaining of funds in payment for goods sold to it, Klein, the

21

president, was accustomed to sign quite a considerable number of checks in blank and deliver them to the vice-president and treasurer, Field, who was the active man in the business and who, when occasion required, filled in the checks already signed by the president, signed them himself as treasurer and delivered them in payment of the obligations of the plaintiff corporation. At times the plaintiff corporation was a borrower to a considerable extent from the defendant bank. These loans were negotiated always by the treasurer, Field. Klein, plaintiff's president, was not known to the bank. However, on or about April 12, 1922, Klein walked into the bank and requested the bank to stop payment on a blank check numbered 6712. The bank was given no information as to the date of the check, the payment of which was sought to be stopped, as to the amount of the check, or the name of the payee. As plaintiff's nominal president came into the bank he approached the desk of the assistant manager of the defendant bank and stated that he had left a blank check or a few blank checks in the office, and that when they went to look for check No. 6712, they could not find it; that it had either been mislaid or lost, and that he wanted to stop payment on it. No other information than the bare number of the check was furnished to the defendant bank. On the same day, April 12, 1922, the defendant bank, by its manager, in writing notified the plaintiff that the bank had placed stop-payment on the plaintiff's check numbered 6712. On April 13, 1922, the day following, Charles Field, the plaintiff's vice-president and treasurer, called at the bank with a check dated on that day for the sum of $4,000, payable to the order of bearer. The check thus presented by plaintiff's treasurer was numbered " 6712-L." The check was properly signed by both the president, Klein, and by the treasurer, Field. Field, at the time of presenting the check, advised the bank to the effect that the money was needed at once by the corporation for some business transactions, and that unless the money could be obtained a profitable deal would be lost. At that time the bank had received no information of any trouble between Field and his corporation, or of any lack of authority of Field to still act as treasurer and business manager of the plaintiff. Indeed, the evidence is undisputed that at this time Field was still the treasurer of the plaintiff corporation, and solely in full charge of its business affairs. The testimony of the bank officials and of Field himself was that he handled exclusively the bank account and transactions with the bank. Field testified that there was no officer superior to him in authority; that he took no orders from any other officer of the corporation; and that he gave orders to other officers. Both plaintiff's president, Klein, and Steinberg,

the owner of the remaining half of the stock, were present at the trial, but neither took the witness stand to contradict Field. The teller to whom the check was first presented declined to pay the same for the reason that it was drawn upon uncollected funds, that is to say, that while plaintiff's balance in the bank was more than enough to pay the check, such balance was made up in part by uncleared checks of customers. The teller requested Field to obtain the consent of the assistant manager to payment of the check, and Field thereupon applied to the assistant manager for his permission to the teller to pay the check from uncollected funds, which permission was given and the $4,000 was thereupon paid by the bank to Field, plaintiff's treasurer. Field first indorsed the check in the name of the plaintiff corporation, by himself as treasurer, but was informed by the teller that as the check was drawn to bearer the practice of the bank was to have the party to whom the money was paid indorse the check in person; and thereupon the indorsement of the plaintiff by Field as treasurer was erased, and Field indorsed the same personally and received the money. It was such payment of the check that the plaintiff insists was contrary to its stop-payment order, which had been given the day before and acknowledged by the defendant bank. While it is true that the number of the check, payment of which the plaintiff sought to stop, was the same as that of the check paid to Field on the day after except that on the latter check the letter " L " was added to the number, the check paid to Field was not dated until the day after the stop-payment order was given. Two days after the $4,000 check was cashed and on April 15, 1922, the plaintiff wrote the defendant bank, specifying the numbers, amounts and payees of some nine checks which the plaintiff specified were " the only checks that appear outstanding on our books," and further stated: " Mr. Charles Field is no longer treasurer of this company, has no authority to sign checks or notes. We therefore request you to honor no checks or notes bearing his signature, excepting those enumerated above." This letter was the first intimation that the defendant bank had that Field had not full authority to manage the business affairs of the plaintiff and to act as its treasurer. At the same time the plaintiff forwarded to the defendant bank a copy of the minutes of a special meeting of the stockholders of the plaintiff corporation, held April 14, 1922. The minutes recited as follows:

" WHEREAS, it appears that Charles Field, formerly the Treasurer of the Cardo Drug Company, Inc., has appropriated for his own use the sum of Four Thousand ($4000.00) Dollars from the funds of this Corporation, and

**324** Cardo Drug Co., Inc., *v.* Chatham & Phenix Nat. Bank.

First Department, February, 1926.                    [Vol. 215

"Whereas, it is the intent of this meeting to remove the said Charles Field as an officer, Treasurer and Director of this Corporation, now therefore, it is

"*Resolved*, that the said Charles Field be and he hereby is removed as an Officer, Treasurer and Director of this Corporation * * *."

It will be noted that the foregoing resolution ousting Field as plaintiff's treasurer was not adopted until the day following the cashing of the check in question. There was no proof offered on the trial in behalf of the plaintiff as to what became of the funds withdrawn by Field from the defendant bank on April 13, 1922, or that the said Field did not that day receive the money withdrawn for or on behalf of the corporation. Field testified that at that time he was the owner of one-half of the corporate stock of the corporation; that the president, Klein, owned no shares whatever, but was a mere dummy; that the remaining one-half of the corporate stock was owned by one Charles J. Steinberg. The evidence fairly discloses that a disagreement had arisen between Steinberg and Field as to the management of the corporation and its affairs, which disagreement resulted in Field's ouster from the corporation.

Under the proofs, at the close of the evidence, the court denied the motion of the defendant bank for a dismissal of the complaint, and granted the motion of the plaintiff for the direction of a verdict in plaintiff's favor for the moneys paid out by the bank to Field upon the check of April 13, 1922. The defendant bank then asked to go to the jury upon the following questions of fact: *First*, whether or not the form of the notice to stop payment of the check was sufficient to charge the bank with negligence in paying out the plaintiff's funds upon the check of April 13, 1922; and, *second*, whether or not the payment to Field, the treasurer of the plaintiff corporation, was a payment to the plaintiff, and as to whether or not the presentation of the check by the treasurer of the plaintiff corporation was an implied withdrawal of the stop-payment order.

Prior to the trial of the action the plaintiff moved for summary judgment in its favor. Its application was granted, and judgment entered in accordance therewith. On appeal to this court the order and judgment were reversed, this court holding that issues were raised in the case which should not have been disposed of as a matter of law, but which should be tried before a jury. (*Cardo Drug Co., Inc.,* v. *Chatham & Phenix Nat. Bank,* 209 App. Div. 167.) In the opinion of Mr. Justice Martin on the former appeal, in which this court unanimously concurred and which was based

upon the averments contained in the affidavits used upon the motion, which averments substantially conformed to the proofs upon the trial, it was said: " * * * from the entire situation an inference might reasonably be drawn that Field impliedly withdrew the stop-payment order * * *." No reason suggests itself, even though plaintiff's non-active and financially disinterested president on April twelfth might have notified the bank to stop payment on a check numbered 6712, which he informed the bank had been " mislaid " or " lost," why Field, the plaintiff's general manager and active man, and the owner of one-half of its capital stock, and its treasuerer and vice-president, could not have withdrawn such stop-payment order and required payment of the check. There was no intimation, when Klein notified the bank that the check had been mislaid or lost, that Field had misappropriated it or that the latter's authority had been curtailed in any way. All that Klein was apparently doing was protecting the plaintiff against some third person who might have dishonestly obtained possession of the lost check. We think the trial court improperly directed a verdict in plaintiff's favor and that upon the evidence the complaint should have been dismissed upon defendant's motion.

The record is barren of any evidence showing that the check was not cashed for and on behalf of the corporation, or that the corporation did not receive the moneys paid thereon. Indeed, the contrary conclusively appears from the minutes of the meeting of the plaintiff corporation on April 14, 1922, when Field was removed from the office of treasurer and director of the corporation. In these minutes it is expressly recited that Charles Field, the former treasurer of the plaintiff, had appropriated for his own use the sum of $4,000 from the funds of the corporation. If these moneys were not paid to the corporation, how could Field have ever appropriated them? I think these minutes clearly indicate a ratification by the plaintiff of the cashing of the check by Field.

No evidence was given upon the trial to show that the check referred to merely by number was the same check which was dated a day later and paid by the defendant. At the time the stop-payment order was given, April 12, 1922, the check which was paid was not in existence, it having been drawn and bearing date on April 13, 1922. There was not the slightest evidence presented at the trial in any way bringing into question the full authority of Field, the treasurer of the plaintiff, to obtain the money upon the check which he presented on April thirteenth. The evidence showed that at this time Field had in his possession several other blank checks bearing other numbers, signed by plaintiff's president,

any one of which he could have filled out, and against the payment of which no possible objection could have been made.

At the time the court directed the verdict in favor of the plaintiff the court also, of its own motion, directed that the jury render a verdict in favor of the defendant bank against the defendant Field for the amount of moneys paid to him on the check of April 13, 1922. While the defendant bank had brought in Field as a defendant, it did not ask on the trial for a verdict in its favor against Field. I can find no basis for the direction of the verdict in favor of the defendant bank against the defendant Field. The bank claimed that the moneys were properly paid to Field as treasurer of the plaintiff, and if so, there would be no recourse against Field personally. The court, however, took the view that the bank paid the money to Field in violation of the plaintiff's stop-payment order, and that, therefore, it paid plaintiff's money without authority. I think the evidence did not justify such conclusion of the trial court, and that the evidence showed that any stop-payment order which plaintiff may have made was revoked by plaintiff's treasurer, Field, when, on the day following, he presented the check for $4,000 drawn to bearer; and that the payment of such check was, in fact, a payment to the plaintiff corporation, and that plaintiff was bound thereby.

The judgment should be reversed, with costs to the appellant Chatham and Phenix National Bank against the plaintiff and the plaintiff's complaint should be dismissed, with costs, and the supplemental complaint of the defendant bank dismissed, without costs.

CLARKE, P. J., FINCH, MARTIN and BURR, JJ., concur.

Judgment reversed, with costs to appellant Chatham and Phenix National Bank against the plaintiff, and plaintiff's complaint dismissed, with costs, and supplemental complaint of the defendant bank dismissed, without costs.